**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>Olin Windfield Paige, III and Tawney Marie Paige,<br><br>      Debtors. | Chapter 7<br><br>Case No. 22-20769 (JJT) |
| Pointe Residential Builders BH, LLC,<br><br>      Plaintiff,<br><br>v.<br><br>Olin Windfield Paige, III,<br><br>      Defendant. | Adv. Case No. 23-02019 (JJT)<br><br>Re: ECF Nos. 1, 21, 32, 39 |

**MEMORANDUM OF DECISION**
**GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

    Before the Court is the Motion for Default Judgment ("Motion," ECF No. 21) filed by Pointe Residential Builders BH, LLC ("Plaintiff") on February 21, 2024. In the Motion, the Plaintiff seeks the entry of default judgment against the debtor–defendant, Olin Windfield Paige, III ("Debtor").[1] The Debtor filed a response to the Motion on March 15, 2024 ("Response," ECF No. 32).[2] The Plaintiff then filed a

---

[1] The underlying Chapter 7 case was filed by Olin Windfield Paige, III and Tawney Marie Paige jointly, but Mr. Paige is the only defendant in this Adversary Proceeding. All references to the "Debtor" in this Memorandum are thus to Mr. Paige alone.

[2] The Debtor styled the Response as a "Motion Objecting to Default Judgment." The Court treats this a response to the Motion rather than a separate motion.

reply to the Response a week later ("Reply," ECF No. 39). For the reasons that follow, the Court grants the Motion.

I.  Background

A.  Procedural History

On October 31, 2022, Olin Windfield Paige, III and Tawney Marie Paige filed their voluntary Chapter 7 petition (MC-ECF No. 1). After multiple extensions of time, the Plaintiff filed its complaint against the Debtor on November 15, 2023 ("Complaint," ECF No. 1, MC-ECF No. 50).

In the Complaint, the Plaintiff seeks a determination that a debt of $463,519.77 plus interest owed to it by the Debtor be excepted from discharge under § 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code and Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure. The basis for the Complaint is a judgment that the Plaintiff obtained against the Debtor and his business, TMP Construction Group, LLC ("TMP"), in the Connecticut Superior Court, which was later affirmed by the Connecticut Appellate Court. The Superior Court judgment found unjust enrichment and violation of the Connecticut Unfair Trade Practices Act ("CUTPA") by TMP and the Debtor. The Plaintiff alleges in the Complaint that, under principles of collateral estoppel, the Debtor is precluded from contesting issues of fact found in the Superior Court's final judgment, which in turn leads to the conclusion that the debt owed to the Plaintiff is nondischargeable as being caused by misrepresentation, embezzlement, and willful and malicious injury.

A summons was issued on November 15, 2023, which provided that the Debtor's answer was due by December 15, 2023 (ECF No. 2). The Debtor then filed his appearance on December 4, 2023 (ECF No. 4), but did not timely file an answer. On January 19, 2024, the plaintiff filed a request for entry of default for failure to plead (ECF No. 10), which the clerk of court entered on January 22, 2024 (ECF No. 11).

On February 14, 2024, the Debtor filed both his Motion to Set Aside Default (ECF No. 17) and his Motion for Extension of Time to Plead (ECF No. 18). In both, he averred that family members had had medical issues arise on January 17 and February 9, 2024, which "ha[d] consumed his time and focus during the past several weeks." In both, he also stated, without support, that his failure to plead had not been willful or deliberate and that the Plaintiff had not been prejudiced. And in the Motion to Set Aside Default, he merely stated, without explanation or elaboration: "I have a meritorious defense."

On February 21, 2024, the Plaintiff filed the instant Motion and its Objection to Motion to Set Aside Default (ECF No. 22). The next day, the Plaintiff filed its Objection to Motion for Extension of Time to Plead (ECF No. 23). In the instant Motion for Default Judgment, the Plaintiff argues that it meets all the requirements under Rule 55 of the Federal Rules of Civil Procedure, namely, that, taking the facts as alleged in the Complaint as true, it has conclusively established liability under § 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code. In its Objection to Motion to Set Aside Default, the Plaintiff argued that the Debtor's

3

willful default and his conclusory statement that he has a meritorious defense were insufficient to meet the burden required under Rule 55(c) to set aside the default. In its Objection to Motion for Extension of Time to Plead, the Plaintiff argued that the Debtor had not shown good cause to extend the time to plead because, among other things, he had had more than two months to retain counsel or file a response pleading before the first of the family medical events cited by the Debtor.

The Court held a hearing on the Debtor's motions to set aside and for an extension on February 29, 2024. At the hearing, the Debtor explained that his defense to the counts alleged against him is that the Superior Court, in a September 24, 2020 articulation, clarified that his behavior was reckless but not intentional. After further inquiry from the Court, the Debtor stated that he has additional unspecified defenses to the counts underlying the Superior Court judgment. The Court then took those motions under advisement.

On March 5, 2024, the Court issued its Memorandum of Decision and Order Denying Debtor's Motion to Set Aside Default and Motion for Extension of Time to Plead (ECF No. 29). In that Memorandum, the Court determined that "[b]ecause the Debtor's default was willful, his defense is not meritorious, and the Plaintiff has been prejudiced, the Debtor has not demonstrated good cause to set aside the default." The Court thus denied the Debtor's motion to set aside the default, denied his motion for extension of time to plead as moot, and set the instant Motion for a hearing.[3]

---

[3] That Memorandum also provided for the filing of the Response and Reply, which were each timely filed.

4

On March 22, 2024, the Debtor moved for reconsideration of the entry of default and denial of a continuance to plead (ECF No. 35).[4] The Court denied the motion to reconsider that same day, without prejudice to the Debtor arguing reasons why default judgment should not enter at the scheduled hearing (ECF No. 37).

The Court held a hearing on the Motion on March 27, 2024, at which the Debtor and counsel for the Plaintiff appeared. After hearing arguments from the parties, the Court took the matter under advisement.

B.   Factual Background

The Connecticut Appellate Court recited the factual background of the parties' dispute as follows:

> In a three count complaint dated June 1, 2018, the plaintiff alleged that the defendants[, TMP and the Debtor,] breached a construction contract between the parties, that the defendants were unjustly enriched, and that they violated CUTPA. Following a trial to the court, the court issued a memorandum of decision on February 18, 2020. The court found that the plaintiff, as general contractor, entered into a construction contract with TMP, as subcontractor, dated December 8, 2016 (contract), in relation to the construction of a condominium complex in Greenwich (project). At the time, [the Debtor] was the manager and controlling member of TMP. Under the contract, TMP was to perform certain work on the project at a fixed contract sum of $1,071,500. Although the contract called for payment upon delivery for furnished materials and equipment stored on-site, TMP convinced the plaintiff to pay an upfront 30 percent deposit for all of the estimated costs of materials and equipment by representing that those funds would be used to buy the materials ahead of time to avoid an anticipated 20 percent price increase on drywall and to avoid delays on the delivery of material needed for the first few weeks on the job. Relying on these representations, the plaintiff paid TMP $305,377.50 on December 13, 2016, which had been requisitioned by TMP for "material procurement".

---

[4] He also filed his answer to the Complaint ("Answer," ECF No. 36) on March 22, 2024.

5

Unknown to the plaintiff (but known to the defendants), TMP was "in a shaky financial condition" when it persuaded the plaintiff to pay the deposit. The court found that "TMP did not intend to use these funds to acquire materials and equipment for the project but, instead, intended to use the funds to finance its payroll and work on other projects." In particular, TMP intended to use the funds from the deposit to fund its obligations under an unrelated subcontract with Viking Construction, Inc. (Viking), dated December 27, 2016, for a project in Bridgeport (Bridgeport project) that would occur simultaneously with the [Greenwich] project . . . .

The court found that "TMP's financial house of cards came tumbling down" when Viking demanded that TMP increase its workforce on the Bridgeport project. The court stated: "Unlike the contract with the plaintiff, TMP's subcontract with Viking was not frontloaded and TMP was paid on a thirty day net basis, based on detailed payment requisition forms. When it increased its labor force in response to Viking's demands, TMP could not carry its payroll. TMP also was not able to pay its principal materialman, Marjam Supply Company ('Marjam'), which also supplied materials for the project. When Viking refused to pay TMP and later terminated its subcontract in May, 2017, TMP used the balance of funds in its account to make payroll. [The Debtor] decided the remaining funds would not be used to pay state and federal taxes or to pay its suppliers. Marjam had a balance due on the Bridgeport project of $147,000. Marjam was owed $70,617.32 on the project for materials delivered but not paid for by TMP. Marjam placed a mechanic's lien in that amount on the property. The mechanic's lien has not been released, remains on the property and is subject to a pending foreclosure action to which the plaintiff is not a party." Due to TMP's failure to perform in accordance with the contract, the plaintiff sent TMP notices of default on June 22 and December 12, 2017. The contract ultimately was terminated by the plaintiff on December 17, 2017.

With respect to the breach of contract claim, the court concluded that the contract was properly terminated and that TMP breached the contract by its failure (1) to perform the work, and to promptly cure defaults upon written notice, (2) to pay the difference between the value of the completed work and the amounts requisitioned and paid to TMP, (3) to pay for materials, equipment and labor used in the period covered by the requisitions, and (4) to furnish satisfactory evidence of completed work upon request by the plaintiff. The court, however, concluded that the plaintiff failed to satisfy its burden of proving damages in accordance with the provision of the contract entitling it to replacement costs,

6

stating that the "witnesses' estimate of 'approximately $500,000' premium paid to replacement subcontractors seems to have been a guess plucked out of the air and is not credible."

The court also found that TMP was unjustly enriched. It found that "under the circumstances here, the injustice was TMP's deceiving the plaintiff into paying a deposit not required under the contract and requisitioned in violation of contract terms and under false pretenses. TMP and [the Debtor] never intended to use the deposit to order materials and equipment for the project as represented. There is no remedy under the contract for restitution of the deposit wrongfully requisitioned."

As to the CUTPA claim, the court found that the defendants' conduct was "deceptive, unethical and unscrupulous and constituted an unfair and deceptive business practice" in violation of the statute. It found that "[the Debtor] was aware the deposit was requisitioned for material procurement for the project but was not intended or used for the purposes represented, but failed to disclose this contrary intention to the plaintiff. [The Debtor] used the funds provided by the plaintiff to pay other expenses of TMP unrelated to the project. Moreover, the financial circumstances and needs of TMP were such that [the Debtor] was aware that TMP would not be able to finish the project or pay the plaintiff back if TMP's expenses grew or cash flow was disrupted and recklessly exposed the plaintiff to this risk."

The court found that "the damages for unjust enrichment and the actual damages recoverable under CUTPA are the same under the facts proven here: $224,878, the net of the $305,378 deposit paid less the $80,500 stated value in the requisition for the completed work. This sum represents the unjust benefit received by TMP and also equals the actual loss sustained by the plaintiff." The court also awarded punitive damages pursuant to [Conn. Gen. Stat.] § 42-110g (a) in the amount of $225,000 because it found that the "defendants' conduct in requisitioning a deposit specifically for material purchases with the intention of diverting the funds for other uses and depleting the funds for purposes unrelated to the project was intentional, wilful and done with reckless indifference to the plaintiff's rights." In concluding that the plaintiff proved its CUTPA claim, the court exercised its discretion and awarded reasonable attorney's fees. In its memorandum of decision, the court ordered the plaintiff to submit an affidavit as to fees and costs. The court rendered judgment in the amount of $463,519.77, in favor of the plaintiff on February 18, 2020.

*Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, 213 Conn. App. 445, 447–51, 278 A.3d 505, 510–12 (2022) (cleaned up). The Debtor and TMP appealed the Superior Court judgment to the Appellate Court, which affirmed. *Id.*, 213 Conn. App. at 462, 278 A.3d at 518. The judgment of the Superior Court is final, not subject to stay, reconsideration, remand, or further state court appeals.

II.   Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

III.   Discussion

    A.   Default Judgment

Under Rule 55(b) of the Federal Rules of Civil Procedure, as applied by Rule 7055 of the Federal Rules of Bankruptcy Procedure, the Court may enter default judgment against a party. "The court is to exercise sound judicial discretion in determining whether the entry of default judgment is appropriate. In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their

8

sufficiency to state a claim." *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09 CV 4810 RRM ALC, 2011 WL 1131401, at *2 (E.D.N.Y. Mar. 11, 2011).

"[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *see also Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 175 (2d Cir. 2001) ("A clear preference exists for cases to be adjudicated on the merits."). The Second Circuit "has never hesitated to reverse the denial of a motion to vacate a default judgment where further factfinding was necessary to ensure that substantial justice was served." *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch*, 100 F.3d 243, 249 (2d Cir. 1996). Such, however, "must present more than conclusory denials when attempting to show the existence of a meritorious defense." *Pecarsky*, 249 F.3d at 173.[5]

B.    Nondischargeability

Section 523(a) of the Bankruptcy Code provides for various exceptions to discharge. Relevant here, the discharge under § 727 "does not discharge an individual debtor for any debt" for: money obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition"; embezzlement; or "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(2)(A), (4), (6). Each of these exceptions to discharge must be sought by the

---

[5] Here, the Debtor's averments are patently deficient, and, in this context, the decisions of the state courts leave no bona fide grounds for a cognizable defense.

9

creditor owed such debt in an adversary proceeding. *Id.*, § 523(c)(1); Fed. R. Bankr. P. 7001(6).

    C.    Application

        1.    False Representation—11 U.S.C. § 523(a)(2)(A)

Under § 523(a)(2)(A) of the Bankruptcy Code, with an exception irrelevant here, the Debtor may not discharge debts for money obtained by a false representation. 11 U.S.C. § 523(a)(2)(A).[6] In order for a plaintiff to prevail on such a claim, that plaintiff must establish that:

(1) the Defendant made a false representation;
(2) at the time the representation was made, the Defendant knew it was false;
(3) the Defendant made the representation with intent to deceive the Plaintiff[];
(4) the Plaintiff[] justifiably relied on the representation; and
(5) the Plaintiff[] sustained loss or damage as a proximate consequence of the false representation.

*Metcoff v. Parrella (In re Parrella)*, 622 B.R. 559, 566 (Bankr. D. Conn. 2020).

Here, the well-pleaded allegations establish that: (1) the Debtor made a false representation in stating that the deposit would be used for the Plaintiff's project, (2) the Debtor knew that the representations were false, (3) the Debtor made the representation intending to deceive the Plaintiff, (4) the Plaintiff relief on the representation, and (5) the Plaintiff sustained a loss as a result. Complaint ¶¶ 9, 14–20; *see also* Motion ¶¶ 75–80. Accordingly, the Plaintiff has met its burden to

---

[6] That provision also excepts from discharge those debts arising from money obtained through false pretenses or actual fraud. *Id.* Because the Motion only addresses false representation, however, that is all the Court address here.

establish its entitlement to have the debt owed to it deemed nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code.

        2.        Embezzlement—11 U.S.C. § 523(a)(4)

Under § 523(a)(4) of the Bankruptcy Code, the Debtor is also precluded from discharging debts for embezzlement. 11 U.S.C. § 523(a)(4). "[E]mbezzlement requires a showing of wrongful intent" and "requires conversion[.]" *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274–75 (2013) (cleaned up). "Embezzlement requires a showing that (1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent." *Munoz v. Boyard (In re Boyard)*, 538 B.R. 645, 654 (Bankr. E.D.N.Y. 2015) (internal quotation marks omitted).

Here, well-pleaded allegations establish that: (1) the Debtor rightfully possessed the Plaintiff's property because the Plaintiff paid TMP the deposit, (2) the Debtor misappropriated the deposit, and (3) the circumstances implied fraudulent intent. Complaint ¶ 9, 21–42; *see also* Motion ¶¶ 88–90. These allegations also demonstrate the Debtor's wrongful intent and conversion of the deposit in line with the Supreme Court's description of embezzlement. The Plaintiff has thus shown its entitlement that the debt owed to it be deemed nondischargeable under § 523(a)(4) of the Bankruptcy Code.

3.  Willful and Malicious Injury—11 U.S.C. § 523(a)(6)

Under § 523(a)(6) of the Bankruptcy Code, the Debtor may not discharge a debt owed "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "In addition, the injury caused by the debtor must also be malicious, meaning wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 105 (2d Cir. 2019) (cleaned up).

Here, the well-pleaded allegations establish that the Debtor willfully and maliciously injured the Plaintiff through misuse of the deposit for a purpose other than that represented, which resulted in the Plaintiff sustaining a loss. Complaint ¶¶ 9, 43–62; *see also* Motion ¶¶ 96–101. Based upon these facts, the Plaintiff has established its entitlement to having the debt owed deemed nondischargeable under § 523(a)(6) of the Bankruptcy Code.

4.  Noncompensatory Damages

The Plaintiff has also requested that the interest, punitive damages, attorney fees, and costs associated with the Superior Court's judgment be deemed nondischargeable. This request is consistent with precedent. *See Cohen v. de la Cruz*, 523 U.S. 213, 220–21 (1998) ("When construed in the context of the statute as a whole, . . . § 523(a)(2)(A) is best read to prohibit the discharge of any liability

arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud."); *Parris v. Delaney (In re Delaeny)*, 504 B.R. 738, 752 (Bankr. D. Conn. 2014) (determining that compensatory and punitive damages and attorney fees were nondischargeable under § 523(a)(6); *FDIC v. Roberti (In re Roberti)*, 201 B.R. 614 (Bankr. D. Conn. 1996) (concurring with courts that had held that noncompensatory damages are nondischargeable under § 523(a)(4)). Accordingly, all components of the Superior Court's award, both compensatory and noncompensatory, are determined to be nondischargeable.[7]

     5.     The Debtor's Alleged Defenses Are Meritless

In his Response, the Debtor raises several points that he believes provide him with defenses to the Complaint. First, the Debtor fixates on the Superior Court's finding that the Plaintiff failed to prove contract damages. The Plaintiff, however, is not seeking to have any contract damages deemed nondischargeable, but those damages related to its CUTPA claim.

Second, the Debtor reiterates his argument from his Motion to Set Aside Default that the Superior Court's articulation found him to be reckless but not intentional. The Court has previously addressed these arguments in its Memorandum of Decision and Order Denying Debtor's Motion to Set Aside Default and Motion for Extension of Time to Plead (ECF No. 28) but will reiterate a few

---

[7] The Complaint requests that "any postjudgment interest earned as of the date of the [Superior Court] Judgment" be declared nondischargeable. The Motion and Reply, however, specifically request postjudgment interest under 28 U.S.C. § 1961(a). Under Conn. Gen. Stat. § 37-3a, the Plaintiff may have been entitled to postjudgment interest of 10% per annum; however, the federal judgment rate applicable on February 18, 2020, the date of the Superior Court's judgment, was 1.48% per annum. Because the Court will not give the Plaintiff more than it has asked for, the Court need not decide which is correct and will use the federal judgment rate.

13

points here. The Debtor has been overly focused on the final sentence of the Superior Court's September 24, 2020 articulation, in which it stated: "As to the intention to divert the deposit for other uses, the evidence of defendants' business practices as well as the failure to use the deposit for the purposes represented and diversion of the funds indicated that defendants intended throughout to use the deposit to finance its operations and other projects and that the diversion of the deposits was intentional and/or reckless under the circumstances." *Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, No. FST-CV-18-6037047-S, 2020 WL 6121376, at *2 (Conn. Super. Ct. Sept. 24, 2020). Particularly, the Debtor has argued in his Motion to Reconsider (ECF No. 35) that the use of "and/or" "altered [the Superior Court's] view regarding whether [TMP's and the Debtor's] acts were maybe reckless but not intentional." The Court agrees with the Debtor that "and/or" can mean one thing, the other, or both and is inherently ambiguous.[8] *See, e.g.*, MERRIAM-WEBSTER'S DICTIONARY OF ENGLISH USAGE 93–94 (Merriam-Webster, Inc. 1994) ("Most of the more recent criticism in our files is . . . aesthetic—*ugly* is the usual epithet—although a few consider it confusing or ambiguous[.]"). On its own, that might have lent credence to the Debtor's argument. But that is hardly the sole finding of intentionality by the Superior Court in the *same sentence*, let alone the Superior Court's two memoranda of decision.[9] These findings were

---

[8] To the extent the Court said otherwise in footnote 5 of its March 5, 2024 memorandum of decision (ECF No. 28), it reevaluates that proposition here.

[9] *See Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, No. FST-CV-18-6037047-S, 2020 WL 1231575, at *1 (Conn. Super. Ct. Feb. 18, 2020) ("Unknown to Pointe but known to TMP and Paige, TMP did not intend to use these funds to acquire materials and equipment for the Project but instead intended to use the funds to finance its payroll and work on other projects, notably its obligations under a subcontract with Viking Construction, Inc."); *id.* at *2 ("TMP and Paige never

14

upheld by the Appellate Court. *See generally Pointe Residential Builders BH, LLC v. TMP Constr. Grp., LLC*, 213 Conn. App. 445, 278 A.3d 505 (2022).[10] So although it is true that recklessness was considered by the state courts, intentionality was unequivocally found many times.

Third, the Debtor mistakenly contends that he is "not precluded from contesting issues of fact found in the Superior Court judgment." At oral argument on the Motion, the Court asked whether the Debtor was asking this Court to retry those facts as found by the Superior Court, which he affirmed. Collateral estoppel,

---

intended to use the deposit to order materials and equipment for the Project as represented."); *id.* ("The Court finds that Paige was aware the deposit was requisitioned for material procurement for the Project but was not intended or used for the purposes represented, but failed to disclose this contrary intention to Pointe."); *id.* ("The deposit was obtained by false pretenses through misrepresentations about its need and intended use and failure to disclose TMP's actual plan to finance the Project, including materials and equipment, though cash flow and supplier credit lines."); *id.* at *4 ("defendants' conduct in requisitioning a deposit specifically for material purchases with the intention of diverting the funds for other uses and depleting the funds for purposes unrelated to the Project was intentional, willful and done with reckless indifference to Pointe's rights").

[10] The Appellate Court specifically held that "the evidence supports the court's findings that the defendants' false representations to the plaintiff that the deposit would be used to purchase materials and rent equipment was intentional, deceptive, unethical, and unscrupulous in that they fully intended for TMP to use the deposit to fulfill obligations under other projects unrelated to the plaintiff's project." 213 Conn. App. at 462, 278 A.3d at 517.

15


res judicata,[11] and the *Rooker–Feldman* doctrine,[12] however, make that request impossible to address.[13]

Finally, the Debtor argues that the "extraordinary amount of money" involved "would be life-altering for my family." The Court recognizes that such a judgment would be a huge weight on the Debtor; however, the Court is not free to disregard the Bankruptcy Code's clear language. *Cf. Bartenwerfer v. Buckley*, 598 U.S. 69, 83 (2023) (holding that a debt for fraud committed by a debtor's business partner—fraud she herself had not committed but was also liable for—was nondischargeable under § 523(a)(2)(A)).

---

[11] "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984). Res judicata and collateral estoppel:
> protect the finality of judicial determinations, conserve the time of the court and prevent wasteful relitigation. Res judicata, or claim preclusion, is distinguishable from collateral estoppel, or issue preclusion. Under the doctrine of res judicata, a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim. In contrast, collateral estoppel precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. Furthermore, to invoke collateral estoppel the issues sought to be litigated in the new proceeding must be identical to those considered in the prior proceeding. Both issue and claim preclusion express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest.

*Mazziotti v. Allstate Ins. Co.*, 240 Conn. 799, 812–13, 695 A.2d 1010, 1017 (1997) (cleaned up).

[12] Under the *Rooker–Feldman* doctrine, "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Superior Court's judgment was affirmed by the Appellate Court and then was taken no further—which happened before this adversary proceeding and the underlying main case were filed. This Court cannot review and reject the Superior Court's findings of fact and conclusions of law.

[13] It is chiefly because of application of res judicata, collateral estoppel, and the *Rooker–Feldman* doctrine that the Court is disinclined to proceed to the merits of this case. Were the Court to deny the Motion, the Plaintiff would immediately be able to file a motion for summary judgment that would necessarily be granted based upon application of these doctrines.

In sum, the Debtor's defenses cannot overcome the Court's obligations to respect prior decisions and the law.[14] Whether adjudged on the merits or by virtue of a default through the absence of a cognizable defense, judgment must enter in favor of the Plaintiff.

IV.   Conclusion

For the foregoing reasons, the Motion is GRANTED. A separate judgment will enter.

IT IS SO ORDERED at Hartford, Connecticut this 17th day of April 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[14] The Debtor's belated Answer provides no additional defenses.